UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER FAULKNER,

     Petitioner,

v.                                            Case No.  3:14cv373/MCR/CJK

JULIE L. JONES,

     Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 25).  Petitioner did not reply, although invited to do so. (Doc. 27).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court

show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On June 13, 2012, petitioner was charged in Escambia County Circuit Court Case Number 12-CF-2533, with attempted robbery with a weapon, a second degree felony (Count 1); misdemeanor battery (Count 2); and misdemeanor criminal mischief (Count 3). (Doc. 25, Ex. B).[1]  The information alleged, as to Count 1:

> **CHRISTOPHER RAY FAULKNER, on or about May 21, 2012,** at and in Escambia, Florida, did unlawfully by force, violence, assault or putting in fear, and with the intent to either permanently or temporarily deprive, attempt to take certain property, the property of **TRISHA'S ONE STOP** as owner or custodian, from the person or custody of **CAROL LORINE AINSWORTH** and in the course of attempting to commit said Robbery, carried a weapon, to-wit: **A STICK**, in violation of Sections 812.13(2)(b) and 777.04, Florida Statutes. (**F2-L7**)

(Ex. B).

The allegations of the information were based on the following facts described in the officer's sworn arrest report/probable cause affidavit:

> On 5/21/12, at approximately 1005 hours in Escambia County, Florida, Christopher Ray Faulkner did at 3637 Mobile Highway, commit the offense of battery on a victim, Carol Ainsworth by using a deadly weapon (a large stick). Faulkner then committed armed robbery and criminal mischief by ripping the cash register away from the counter and throwing it to the ground.

---

[1] All references to exhibits are to those provided at Doc. 25. References to page numbers of exhibits are to those appearing on the bottom center of the page.

On 5/21/12, while stopped at the traffic light at Mobile Highway and Green Street, a white female later identified as V/Carol Ainsworth, who is an employee of Trisha's One Stop at 3637 Mobile Highway, ran out of the store and was screaming that she had been "armed-robbed" and was flagging this officer down for assistance. Sgt Dixon #096 was at the traffic light at Mobile Highway and Green Street, as well. At this time, we both entered the parking lot. Sgt Dixon was obtaining information from V/Ainsworth who was explaining that the suspect was still inside the store. S/Faulkner then exited the store, and believing the suspect was armed, I drew my service revolver and pointed it at S/Faulkner, ordering him to the ground. Myself and Sgt Dixon then placed S/Faulkner under arrest without incident.

V/Ainsworth advised under oath that at approximately 1000 hours, S/Faulkner entered the store and walked directly to the men's bathroom. Once S/Faulkner exited the restroom, S/Faulkner walked behind the employee's counter and struck V/Ainsworth in the back of the head with a large stick. At this time, S/Faulkner ordered V/Ainsworth to the counter, where he purchased a cigar. Once he purchased the cigar, V/Ainsworth jumped away from the counter and then responded by turning around and punching S/Faulkner in the nose and ran out of the store, screaming for help. S/Faulkner then went to the counter and physically removed the cash register and threw it to the ground causing approximately $1,000 in damage.

EMS was requested, and Unit #362 responded, giving medical treatment to V/Ainsworth. I then requested EMS to look at S/Faulkner, due to him being struck in the nose. At this time, S/Faulkner refused medical treatment.

I requested Crime Scene and CST Wakeman #711 responded and processed the scene. The incident was captured on surveillance video, which was placed into Evidence.

(Ex. A, p. 4).

Within a month of petitioner being charged, defense counsel Mr. Gissendanner arranged for a psychological evaluation of petitioner to determine his competency to proceed. (Ex. E). Licensed Psychologist Elaine Bailey, Ph.D., conducted the evaluation and issued a report dated July 23, 2012. (Ex. E). Dr. Bailey's assessment procedures included conducting two mental status examinations of petitioner at the jail (on July 13 and 16, 2012), reviewing relevant legal records, reviewing petitioner's Escambia County Jail Infirmary records, reviewing petitioner's Lakeview Behavioral Center records, and administering two psychological tests. (Ex. E). Dr. Bailey considered petitioner's mental health history and diagnoses, as well as the medication he was taking to stabilize his condition and symptoms. (Ex. E). During her psychological interview with petitioner, Dr. Bailey noted:

> The mental status exam revealed a black male who appeared his stated age of 42. He reportedly did not know the year, month or date and did not know why he was in jail. Despite his history of chronic Schizophrenia, there was evidence that he was exaggerating symptoms during this evaluation. That is, he was extremely forthcoming in presenting his psychotic symptoms with a full array of behavioral displays that are generally associated with psychosis. For example, he was rocking in his chair, laughing inappropriately and had poor eye contact. He was rubbing his legs repeatedly in an agitated manner. He also reported auditory hallucinations in an atypical manner, stating, "I'm hearing voices that tell me to hurt myself or others." He also reported, "I see ghosts and spirits . . . they come talk to me." He failed all tasks that are used to assess global cognition. He described his mood as depressed.

> In essence, despite his history, the presentation of his symptoms suggested the possibility of feigning.  I completed psychological testing to further assess his mental state.

(Ex. E, pp. 20-21).  After psychological testing, Dr. Bailey concluded the following with regard to petitioner's competency to proceed:

> This Defendant has an established history of mental illness.  However, interview and testing indicate clear evidence that he is intentionally feigning memory loss and mental illness.  Such clear and consistent evidence is consistent with prior notes documenting antisocial features to his personality.  Malingering was also evidenced when I attempted to evaluate his understanding of competency related criteria.  For example, he stated that he does not know why he is in jail and does not know the charges.  He tells me that his lawyer told him but he does not remember.  This type of memory loss is completely inconsistent with his diagnosis of Schizophrenia.  He also insisted that he does not know any of the possible penalties.  When I directly challenged him, emphasizing that he has been to prison at least five times in the past and should understand the possible penalties, he guessed "A life sentence?"  Again, his response suggests malingering.  Similarly, he stated that the State Attorney's role is "to help me" and when I challenged his response he stated, "Yeah, to help give me time."  Importantly, I found no history of deficient intellectual functioning in his record.  Based on his experience with the legal system, it is my opinion that he has the capacity to appreciate the charges and allegations against him as well as the possible penalties.  He also has the capacity to understand the adversarial nature of the legal process.

> He was similarly uncooperative in providing me with his version of the alleged events.  When I challenged his complete lack of memory, he gave me a sketchy version, and disclaims recall of any illegal events by his part.

> In my opinion, his inappropriate behavior such as rubbing his legs in an agitated manner, laughing inappropriately, and rocking in his

seat are feigned.  Based on today's evaluation, I believe that he is currently capable of testifying relevantly.

Based on this evaluation, I concluded that the Defendant has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and has a rational, as well as factual, understanding of the proceedings against him.  In other words he <u>is</u> competent to proceed.

(Ex. E, pp. 23-24).

On August 20, 2012, the State filed separate notices of petitioner's qualification for mandatory sentencing as a Prison Releasee Reoffender (PRR), and of its intent to seek enhanced sentencing due to petitioner's qualifying as a Habitual Felony Offender (HFO).  (Ex. C).  Petitioner's maximum possible penalty for the attempted robbery was 30 years imprisonment with a 15-year mandatory minimum. Although the crime was a second degree felony carrying a statutory maximum of 15 years imprisonment (*see* Fla. Stat. § 812.13(2)(b) and § 777.04 (2012)), petitioner's qualification as an HFO exposed him to a maximum of 30 years imprisonment for the second degree felony (*see* Fla. Stat. § 775.084(4)(a)2. (2012)), and petitioner's qualification as a PRR required the imposition of a 15-year mandatory minimum (*see* Fla. Stat. § 775.082(9)(a)-(c) (2012)).  (Ex. D, p. 26; Ex. F, p. 8).  Petitioner's maximum possible sentence for each of the misdemeanors was one year in the county jail.  (Ex. D, p. 26; Ex. F, p. 8).

On August 20, 2012, petitioner executed a counseled, negotiated written plea agreement (titled "Sentence Recommendation") whereby he agreed to plead nolo contendere to all counts as charged in the information, in exchange for the State recommending a 15-year, PRR sentence.  (Ex. D, pp. 26-29).  As a factual basis for petitioner's plea, the plea agreement incorporated by reference the sworn arrest report that was already part of the state court record.  (Ex. D, p. 26).  Petitioner certified in the written plea agreement that he had read the information and understood the charges set forth therein; that he understood the constitutional rights he was giving up by entering his plea and voluntarily chose to waive them; that he discussed with his attorney all of the consequences of entering his plea and was satisfied with his attorney's advice; that he had reviewed the facts of his case with his attorney and agreed and stipulated there were sufficient facts available to the State to justify his plea; that he had never been declared legally incompetent or insane; that he was entering the agreement voluntarily of his own accord and with full understanding of all matters set forth in the information and in the plea agreement; that he understood the State was seeking an enhanced sentence and that such sentence could require a mandatory minimum sentence; and that his attorney had reviewed discovery disclosed by the State.  (Ex. D).  Defense counsel certified, by signing the plea agreement, that he had discussed with petitioner the nature of the

charges, the essential elements of each, the evidence against petitioner of which counsel was aware, possible defenses, maximum penalties, etc., and that counsel had reviewed all discovery disclosed by the State.  (Ex. D, p. 29).

At the plea hearing, the trial court conducted an extensive inquiry of petitioner's understanding of the nature of the charges and the consequences of his plea, and of his opportunity to discuss with Attorney Gissendanner the charges, the evidence and possible defenses.  Petitioner affirmed under oath that he understood the charges and the maximum sentences they carried; that he had enough time to go over the plea agreement with counsel and understood everything it said; that he understood he was giving up the right to make the State prove its case against him beyond a reasonable doubt in a court of law; that he was giving up the constitutional rights listed in the plea agreement; and that he was entering his plea freely and voluntarily and felt it was in his best interest.  (Ex. F, pp. 8-9, 11).  As to petitioner's mental state, the trial judge inquired:

> THE COURT:  Have you had any sort of medicine, alcohol, or any other substances in the last 24 hours which will make it so that you do not understand what we're doing here?
>
> THE DEFENDANT:  Yes, ma'am.  I take psych meds.
>
> THE COURT:  All right.  And as I spoke earlier to another gentleman, taking those kind of medications is a good thing.  But do you understand what we're doing here today?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Gissendanner [defense counsel], do you in any way, shape, or form have any concern about Mr. Faulkner's competence to proceed today?

MR. GISSENDANER:  No, Judge.  In fact, I have – Dr. Bailey interviewed him and interviewed him for competency with a report dated July 23rd.  I ask that it be filed with the Court under seal finding him competent to proceed.

THE COURT:  All right.  And let the record reflect that I have had the opportunity over probably the last 30 or 45 minutes to watch Mr. Faulkner in the box because he was one of the last folks out here, and we've had a number of lulls in between.  Not only watching him in the box, but seeing him before me today, I do not have any cause for concern as to his competency to proceed.

All right.  Are you satisfied with the services of your counsel?

THE DEFENDANT:  Yes, Ma'am.

(Ex. F, pp. 9-10).  The court determined there was a sufficient factual basis for petitioner's plea, accepted the plea, and adjudicated petitioner guilty of all counts as charged in the information.  (Ex. F, p. 11).   In imposing sentence, the trial judge asked defense counsel, "Do you stipulate that he qualifies for PRR status, Mr. Gissendanner?"  (Ex. F, p. 11).  Defense counsel responded, "Yes, Judge.  The prosecutor, Mr. Giraud, and I looked at the statute and his record, and I agreed as did Mr. Faulkner." (*Id.*, pp. 11-12).  The court sentenced petitioner as a PRR to 15 years imprisonment on Count 1 with a 15-year mandatory minimum, and to time

served on Counts 2 and 3.  (Ex. F, pp. 10-11).  Judgment was rendered August 20, 2012.  (Ex. G).  Petitioner initiated a direct appeal.  (Ex. H).  Appellate counsel filed an *Anders* brief, asserting that no good faith argument could be made that reversible error occurred in the trial court.  (Ex. I).  Petitioner filed a *pro se* brief, claiming he was not competent to enter his plea.  (Ex. K). The Florida First District Court of Appeal (First DCA) affirmed the judgment on February 4, 2013, per curiam and without a written opinion.  *Faulkner v. State*, 107 So. 3d 409 (Fla. 1st DCA 2013) (Table) (copy at Ex. L).

On February 28, 2013, petitioner filed a *pro se* motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. M).  The motion was summarily denied on February 28, 2013.  (Ex. N).  Petitioner sought certiorari review in the First DCA (Ex. O), but his petition was dismissed on May 16, 2013, for failure to comply with an order requiring him to file a copy of the order for which he sought review.  (Ex. P).

On April 26, 2013, petitioner filed a handwritten *pro se* motion for postconviction relief under Florida Rules of Criminal Procedure 3.800(a) and 3.850. (Ex. Q).  Petitioner then filed a typed version of the postconviction motion on June 4, 2013.  (Ex. R).  On August 29, 2013, the state circuit court determined that the motions were insufficiently pled, and struck them without prejudice to petitioner

filing an amended motion within sixty days.  (Ex. S).  Petitioner filed an amended

Rule 3.850 motion on October 17, 2013.  (Ex. T-1).  The circuit court denied the

amended motion on December 23, 2013, without an evidentiary hearing.  (Ex. U).

The First DCA summarily affirmed on June 27, 2014.  *Faulkner v. State*, 145 So. 3d

833 (Fla. 1st DCA 2014) (Table) (copy at Ex. AA).  The mandate issued July 23,

2014.  (Ex. AA).

Petitioner filed his federal habeas petition on August 7, 2014.  (Doc. 1).  The

petition asserts seven claims for relief.  (*Id.*).  Respondent contends petitioner's

claims fail for one or more of the following reasons:  (1) the claim is not cognizable

on federal habeas review; (2) the claim is procedurally defaulted; (3) the state courts'

rejection of the claim was neither contrary to, nor an unreasonable application of,

clearly established federal law, and did not involve an unreasonable determination

of the facts.  (Doc. 25).

## LEGAL STANDARDS

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must

exhaust all available state court remedies for challenging his conviction, 28 U.S.C.

§ 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364,

365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S.

270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner

"must give the state courts one full opportunity to resolve any constitutional issues

by invoking one complete round of the State's established appellate review process."

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999);

*Picard*, 404 U.S. at 277-78.  A claim that was not properly presented to the state

court and can no longer be litigated under state procedural rules is considered

procedurally defaulted, *i.e.,* procedurally barred from federal review.  *O'Sullivan*,

526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th

Cir. 2014) ("Where a return to state court would be futile – because the petitioner's

claims would clearly be barred by state procedural rules – a federal court can 'forego

the needless judicial ping-pong' and treat unexhausted claims as procedurally

defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998)));

*Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that

federal habeas courts should enforce applicable state procedural bars even as to

claims that were never presented to the state courts).

     A petitioner seeking to overcome a procedural default must show cause and

prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206,

210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be

governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).   The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.

*Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.

*Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record

reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

<u>Standard Governing Challenges to No Contest and Guilty Pleas</u>

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 71 L. Ed. 347 (1926). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)). With regard to a plea admitting criminal conduct, the Supreme Court explained:

> A guilty plea "is more than a confession which admits that the accused did various acts." *Boykin v. Alabama*, 395 U.S. 238, 242, 89

> S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969).  It is an "admission that he
> committed the crime charged against him."  *North Carolina v. Alford*,
> 400 U.S. 25, 32, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).  By
> entering a plea of guilty, the accused is not simply stating that he did
> the discrete acts described in the indictment; he is admitting guilt of a
> substantive crime."

*United States v. Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

"Waivers of constitutional rights not only must be voluntary but must be
knowing, intelligent acts done with sufficient awareness of the relevant
circumstances and likely consequences." *Brady* at 748.  Accordingly, in the context
of a guilty plea, the standard for determining the validity of the plea is "whether the
plea represents a voluntary intelligent choice among the alternative courses open to
the defendant." *Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242.  The assistance of
counsel received by a defendant is relevant to the question of whether a defendant's
guilty plea was knowing and intelligent insofar as it affects the defendant's
knowledge and understanding.  *See McMann v. Richardson*, 397 U.S. 759, 770-71,
90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

"Once a plea of guilty has been entered, nonjurisdictional challenges to the
conviction's constitutionality are waived, and only an attack on the voluntary and
knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427,
429 (11th Cir. 1983).  This waiver includes all claims of ineffective assistance of
counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty

plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  The

Supreme Court said in *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed.

2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process.  When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the offense
> with which he is charged, he may not thereafter raise independent
> claims relating to the deprivation of constitutional rights that occurred
> prior to the entry of the guilty plea.  He may only attack the voluntary
> and intelligent character of the guilty plea by showing that the advice
> he received from counsel was not within the standards set forth in
> *McMann*.

*Id.*, 411 U.S. at 267; *see also  Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct.

886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently

and voluntarily made, bars the later assertion of constitutional challenges to the

pretrial proceedings.").  A jurisdictional defect is one that "implicates a court's

power to adjudicate the matter before it."  *United States v. Peter*, 310 F.3d 709, 712

(11th Cir. 2002).

The advantages of entering a plea may only be secured "if dispositions by

guilty plea are accorded a great measure of finality."  *Blackledge v. Allison*, 431 U.S.

63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  Recognizing that a prisoner more

often than not "has everything to gain and nothing to lose from filing a collateral

attack upon his guilty plea", courts accord great deference to a defendant's

statements during a plea colloquy and are reluctant to allow a defendant to go behind

his own sworn testimony.  *Id.*, 431 U.S. at 71.

> [T]he representations of the defendant, his lawyer, and the prosecutor
> at such a hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings.   Solemn declarations in open court carry a strong
> presumption of verity.   The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted).

When a petitioner challenges the voluntariness of his plea based upon

allegations of ineffective assistance of counsel, the two-prong standard set forth in

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),

applies.  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985);

*see also Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011)

(identifying *Strickland* as the clearly established federal law governing a habeas

petitioner's challenge to his conviction obtained through a plea bargain).  To obtain

relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation

fell below an objective standard of reasonableness," and (2) "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689.  The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court . . . .  Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70.  Counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  *Hill*, 474 U.S. at 56-57

(*quoting McMann*, 397 U.S. at 771).   Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  Thus, while counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 58-59.  "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177

F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an

easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010).  "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105.

As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against
> the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).  When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.  The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

Ground One        "Illegal sentencing enhancement from 2nd degree felony to 1st
                  degree felony also minimum mandatory 15 years exceeds
                  statutory maximum".  (Doc. 1, p. 5).[3]

Petitioner's claim is two-fold.  First, petitioner claims the State "illegally

enhanced" his charge from a second degree felony to a first degree felony.  To

support this assertion, petitioner states:  "The judgment lists the charge to be

---

[3] References to page numbers of the petition are to those assigned by the court's Electronic Filing
System (ECF).

sentenced as a 'less[e]r,' third-degree-felony version of the count originally charged

as robbery, a second-degree felony, but retains the statute number of the first-degree

felony.  The plea form indicates that Faulkner was agreeing to plead to second-

degree-felony level." (Doc. 1, p. 5) (alteration in original).  Second, petitioner

challenges his sentence as a PRR on the grounds that "the PRR enhancement and the

15 years exceeds the statutory maximum sentence allowed by law", and "the trial

court was incorrect in ruling that robbery is a valid PRR-qualifying offense." (*Id.*).

Petitioner asserts he presented this claim to the state courts, but he declines to answer

the question on the petition form directing him to explain how it was raised.  (Doc.

1, p. 6).  Respondent asserts petitioner is not entitled to relief because his claim raises

purely state law issues, is procedurally defaulted, and is without merit.  (Doc. 25, pp.

20-25).

Assuming, without deciding, that petitioner's claim falls within the scope of

federal habeas review, *see Graber v. Sec'y, Dep't of Corr.*, 417 F. App'x 882, 883

(11th Cir. 2011) ("A petitioner's claim that his sentence exceeds the maximum

authorized by state law properly falls within the scope of federal habeas corpus

review because the eighth amendment bars a prison sentence beyond the

legislatively created maximum.  By contrast, a petitioner's challenge to state

sentencing guidelines is outside the scope of federal habeas corpus review." (internal

quotation marks and citations omitted)), the factual basis of his claim is conclusively refuted by the record.  As to the judgment's identification of the crime and offense level for which petitioner was sentenced on Count 1, the judgment correctly identifies petitioner's crime of conviction as attempted robbery with a weapon, and correctly identifies the level of the offense as a second degree felony.  The judgment also correctly identifies the statute numbers for robbery and criminal attempt (Fla. Stat. §§ 812.13(2)(b), and 777.04).  The information on the judgment matches the offense and offense level contained in the information and the plea agreement. Petitioner's second allegation, which asserts that attempted robbery is not a PRR-qualifying offense, is conclusively refuted by Florida's PRR statute.  Section 775.082, Florida Statutes, defines a "prison release reoffender" as "any defendant who commits, or attempts to commit" certain enumerated crimes, including "robbery".   Fla. Stat. § 775.082(9)(a)g. (2012) (emphasis added).  Petitioner's Ground One may be denied on this basis.

Respondent, generously construing petitioner's claim more liberally and in the context of his state court pleadings, notes that petitioner's claim appears to be an abbreviated version of a claim he presented to the state courts as "Ground One" of his April 26, 2013, and June 4, 2013, motions for postconviction relief.  (Doc. 25, pp. 20-21 (referencing Ex. Q, pp. 14-17, and Ex. R, pp. 81-83)).   Even giving

petitioner the benefit of this liberal construction, the undersigned agrees with respondent that petitioner's claim is procedurally defaulted.

A.    Procedural Default

Petitioner alleged in "Ground One" of his April 26, 2013, and June 4, 2013, state postconviction motions:  "Trial Court Enhancement of Degree of Felony from Second Degree to First Degree Violated the Rulings in Apprendi and Blakely".  (Ex. Q, pp. 14-17; Ex. R, p. 81-83 (referencing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004))).  The circuit court, in its non-final order striking the motions with leave to amend, noted the following with regard to this claim:

> In both motions, Defendant claims his sentence of 15 years on a charge of attempted robbery with a weapon is improper based on his allegation of an improper finding, or lack thereof, that the "stick" charged in the information constituted a weapon.  As shown by the exhibits attached to Defendant's first motion, he was charged with attempted robbery with a weapon, to-wit:  a stick, in violation of sections 812.013(2)(b) and 777.04, Florida Statutes, a second degree felony punishable by 15 years incarceration.  They also show that Defendant entered a plea to the charge and agreed to a factual basis, which alleges he carried a large stick with which he struck the victim during the episode.  Defendant therefore fails to assert a sentencing error that may be corrected pursuant to rule 3.800(a).  *See Dixon v. State*, 76 So. 3d 351, 352-353 (Fla. 3d DCA 2011) (finding a stipulation to a factual basis precluded an *Apprendi* challenge).

> Otherwise, Defendant's claims challenge his conviction or raise issues that would need to be resolved pursuant to rule 3.850 and are thus not cognizable under rule 3.800(a).  However, the motions are

insufficiently pled and shall be stricken with leave to file an amended motion. *See Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007); *Nelson v. State*, 977 So. 2d 710, 711-712 (Fla. 1st DCA 2008). Any claims raised in the instant motions and not raised in any such amended motion will be deemed abandoned. Should he decline to amend, Defendant may move the court to enter a final order of disposition on the instant motions. *See* 977 So. 2d at 712.

(Ex. S, pp. 98-99) (footnotes omitted). The court's decretal provided: "Defendant's motions for postconviction relief are STRICKEN WITHOUT PREJUDICE to Defendant to file an amended motion within **60 days** of the date of service of this order. Defendant has no right to appeal this order until entry of the final order." (Ex. S, p. 99) (footnote omitted).

Petitioner filed an amended Rule 3.850 motion; however, his amended motion raised only claims of ineffective assistance of trial counsel. (Ex. T-1). The amended motion did not raise the substantive sentencing claim petitioner included in his original state postconviction motions, nor did it raise the claim petitioner asserts here. A federal habeas petitioner does not satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support a federal claim, or by presenting a somewhat similar claim. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004). "The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'" *Id.* at 1344 (*quoting*

*Picard*, 404 U.S. at 277, 92 S. Ct. at 513). Petitioner's substantive challenge to his sentence (even if construed liberally as grounded in due process principles) does not rest on the same legal basis as his Sixth Amendment ineffective assistance of trial counsel claims, even if the latter is based on counsel's advice concerning sentencing. The two are separate and distinct for purposes of the AEDPA's exhaustion requirement. *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that federal habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement) (*citing Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that substantive claim was "separate and distinct" from ineffective assistance claim based on substantive claim)); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (holding that ineffective assistance claim based on counsel's failure to object to jury instruction was not the same as substantive due process claim challenging the trial court's giving of that instruction). Petitioner's abandonment of the sentencing claim in the state courts renders it procedurally defaulted on federal habeas review. Petitioner has made none of the showings requisite to excuse his procedural default. Petitioner's claim of "actual innocence" asserted in Ground Seven of the petition

falls far short of satisfying the *Schlup* standard.  *See* discussion *infra* Ground Seven.

Petitioner's procedural default bars federal habeas review of Ground One.

B.     Merits

This court may deny habeas relief on the alternative basis that petitioner's

claim is without merit.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State.").  The *Blakely*

line of cases stand for the proposition that "when a defendant pleads guilty the State

is free to seek judicial sentence enhancements so long as the defendant either

stipulates to the relevant facts or consents to judicial factfinding."  *Blakely*, 542 U.S.

at 310 (*citing Apprendi*).  As charged, and as explained above in the Background

and Procedural History, petitioner's attempted robbery with a weapon is a second

degree felony punishable by a maximum of 15 years imprisonment.  Attempted

robbery is a PRR qualifying offense.  Petitioner was sentenced for attempted robbery

with a weapon to 15 years incarceration as a PRR.  (Exs. F, G)  Petitioner, by his

plea, stipulated that the information filed by the prosecution, as well as the arrest

report, established a prima facie case for purposes of the plea. Petitioner also

stipulated to the sentence he received, and that he qualified for sentencing as a PRR.

Petitioner's stipulation supports the imposition of the 15-year mandatory minimum

sentence required for a sentence enhancement under Fla. Stat. § 775.082(9)(a)1.g.,

and renders meritless any *Apprendi*/*Blakely* challenge that his sentence was

"illegally enhanced".

Ground Two          "Incompetent/Involuntary Plea".  (Doc. 1, p. 6).

        Petitioner challenges his no contest plea on the grounds that he was mentally

incompetent to enter it.  Petitioner's claim is broken down into two sub-claims.  First,

petitioner faults the trial court for failing to "order an in depth competency

evaluation", (doc. 1, p. 6), for failing to conduct a competency hearing (doc. 1, p.

12), and for accepting his plea despite his mental incompetence arising from "a

personality and psychiatric disorder."   (Doc. 1, p. 6).  Second, petitioner faults trial

counsel for failing to "assert[ ] that he was mentally incompetent" (*Id.*, p. 6), for

"failing to file a motion to determine his competency to proceed" (*Id.*, p. 6), and for

failing to "order a substantial and complete competency evaluation prior to allowing

him to plea to the charges of this case." (*Id.*, p. 9).  Petitioner claims that had counsel

demanded a competency hearing, "the defense could have presented expert

testimony that would have evidenced to the court" that petitioner "was not capable

of conveying consistent information or understanding the facts at hand", and was

incompetent. (*Id.*, p. 7).  Petitioner states he did not present either of his sub-claims

to the state courts. (*Id.*, p. 13).  Relying on *Martinez v. Ryan*, — U.S. —, 132 S. Ct.

1309, 182 L. Ed. 272 (2012), petitioner asserts that the cause of his procedural default is appellate counsel's ineffectiveness on direct appeal and his lack of postconviction counsel in his Rule 3.850 proceeding.  (*Id.*, p. 13).  Respondent asserts that both claims are procedurally defaulted and without merit.  (Doc. 25, pp. 26-43).  The court need not decide the procedural default issue, because both of petitioner's sub-claims are meritless.

A.    Trial Court Error

Petitioner contends he was incompetent to stand trial when his plea was entered and that the trial court should have ordered a competency evaluation, held a competency hearing, and declined to accept his plea.  (Doc. 1, p. 6).  Petitioner appears to raise both a procedural competency claim (that the trial court erred by not ordering a competency hearing), which is often referred to as a *Pate* claim, and a substantive competency claim (that he was convicted while incompetent), often referred to as a *Dusky* claim.  *See Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 838, 15 L. Ed. d 815 (1966); *Dusky v. United States*, 362 U.S. 402,, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960); *see also Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 n.5 (11th Cir. 2012) (recognizing and distinguishing between the two types of claims).

1.      Procedural Competency Claim

"[T]he conviction of an accused person while he is legally incompetent violates due process."  *Pate v. Robinson*, 383 U.S. at 378; *see also Sheley v. Singletary*, 955 F.2d 1434, 1437 (11th Cir. 1992) ("The due process clause prohibits the trial or guilty plea conviction of a person who is mentally incompetent." (citations omitted)).  In *Dusky*, the Supreme Court set forth a two-pronged standard for determining legal competency:  "[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402 (internal quotation marks omitted).

"*Pate* . . . established a rebuttable presumption of incompetency upon a showing by a habeas petitioner that the state trial court failed to hold a competency hearing on its own initiative despite information raising a bona fide doubt as to the petitioner's competency."  *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992).  In order to trigger the rebuttal presumption, however, "the petitioner bears the burden of showing that objective facts known to the trial court were sufficient to raise a bona fide doubt." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995). Although there are "no fixed or immutable signs which invariably indicate the need

for further inquiry to determine fitness to proceed," "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). A *Pate* claim is necessarily confined to information before the trial court before and during the plea proceeding or trial. *Cf. Medina* at 1106 ("A *Pate* claim 'can and must be raised on direct appeal' because an appellate court hearing the claim 'may consider only the information before the trial court before and during trial.'" (*quoting James*, 957 F.2d at 1572)).

The objective facts available to the state trial court fall far short of raising a bona fide doubt as to petitioner's competency. The trial court was made aware, from petitioner's certifications on the written plea agreement, of petitioner's full understanding of the charges against him, the consequences of his plea and all the information contained in the written plea agreement; that he had discussed the charges and his case with his attorney; and that he had never been declared incompetent or insane. (Ex. D). The trial court was also aware, from information disclosed during the plea hearing, that a defense expert had evaluated petitioner and found him competent to proceed; that defense counsel had no concerns whatsoever about petitioner's competence to proceed on the day of his plea; that petitioner had taken his prescribed medication on the day of his plea; and that his answers to the

court's questions and his behavior and demeanor in court on the day of his plea raised no concern about his competence to proceed. (Ex. F). Petitioner has not come forward with any objective facts known to the trial court that were sufficient to raise a bona fide doubt about his competence to proceed at the August 20, 2012, plea hearing. The fact that petitioner suffered from chronic schizophrenia for which he was taking medication, alone, did not raise a bona fide doubt about his competency. *See e.g., Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1257 (11th Cir. 2002) (denying federal habeas relief on procedural competency claim where trial court knew petitioner suffered from chronic schizophrenia, but also knew petitioner had been tried and convicted on a number of prior occasions without any finding that he was mentally incompetent, and there was no expert opinion suggesting he was mentally incompetent to stand trial); *Medina*, 59 F.3d at 1107 ("The fact that a defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial."). Petitioner's *Pate* claim provides no basis for federal habeas relief.

2.      Substantive Competency Claim[4]

"A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent." *Medina* at 1106.  In contrast to a procedural competency claim, a petitioner raising a substantive claim of incompetency "'is entitled to no presumption of incompetency and must demonstrate his . . . incompetency by a preponderance of the evidence.'" *Lawrence* at 481 (*quoting James*, 957 F.2d at 1571).  Relatedly, the Eleventh Circuit has said that "in order to be entitled to an evidentiary hearing on a substantive competency claim," which petitioner seeks here, "a petitioner must present 'clear and convincing evidence' that creates a 'real, substantial, and legitimate doubt' as to his competence." *Lawrence* at 481 (*quoting James* at 1573); *accord Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992) ("The standard of proof is high.  The facts must positively, unequivocally and clearly generate the legitimate doubt." (alterations and quotation marks omitted)).  A state trial court's finding of competence is a factual finding entitled to deference.  *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue by a State court shall be presumed to be correct.  The [habeas] applicant shall have the burden of rebutting the presumption of correctness by clear and

---

[4] In *Lawrence, supra*, the Eleventh Circuit recognized that there is both pre- and post-AEDPA Eleventh Circuit precedent holding that "substantive competency claims generally cannot be procedurally defaulted." *Id.* at 481.

convincing evidence."); *Maggio v. Fulford*, 462 U.S. 111, 117, 103 S. Ct. 2261, 76 L.Ed.2d 794 (1983) (a finding of competence is a finding of fact); *Medina*, 59 F.3d at 1111 ("The trial court's finding that Medina was competent to stand trial is presumed to be correct. . . .").

Petitioner has not met his high burden.  The July 23, 2012 competency evaluation finding petitioner competent and reporting malingering (Ex. E), the transcript from the August 20, 2012 plea proceeding (Ex. F), defense counsel's statement to the trial court that he had no concerns whatsoever about petitioner's competence (Ex. F, p. 10), and the trial court's independent observations and interactions with petitioner during the plea hearing and finding that petitioner was competent (Ex. F, pp. 9-10), all support a finding that petitioner was competent when he entered his plea, that is, that he had the ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him.  Petitioner has presented no evidence – beyond the information and records already considered by Dr. Bailey and the state court who both found him competent – to support his claim that he was incompetent. A history of chronic schizophrenia, on its own, is insufficient.  *See Wright*, 278 F.3d at 1259 (addressing *de novo* the merits of a substantive competency claim and determining that a diagnosis of chronic schizophrenia, on its own, was "not enough

to create a real, substantial, and legitimate doubt as to whether [the petitioner] was competent to stand trial."); *Lawrence*, 700 F.3d at 482 (holding that trial court's finding that petitioner was competent was not clearly erroneous, where he had been evaluated by two court-appointed experts earlier in the proceedings and found competent, and he merely asserted a diagnosis of schizophrenia). Petitioner's allegations supporting his *Dusky* claim do not generate a substantial and legitimate doubt as to his competence to enter his plea. Petitioner is not entitled to an evidentiary hearing, or federal habeas relief, on his substantive competency claim.

B.    Ineffective Assistance of Trial Counsel

Petitioner faults trial counsel for failing to seek "a substantial and complete competency evaluation" and a hearing to determine his competence. Petitioner has not shown deficient performance or prejudice. Defense counsel arranged for a licensed psychologist to conduct a competency evaluation of petitioner one month after he was charged. Nothing in the record suggests that Dr. Bailey was not qualified to evaluate petitioner's competence or that her evaluation was incomplete. To the contrary, a review of the evaluation itself establishes that Dr. Bailey was qualified and conducted a thorough evaluation. (Ex. E). The evaluation considered all of the information petitioner asserts it should have – that he "suffers from a personality and psychiatric disorder" (doc, 1, p. 6); that he "had a life-long history

of mental health issues"; that he "reported that he 'hears voices and wanted to hurt himself'"; and that he was on "suicide watch" at the jail.  (Doc. 1, pp. 9-10; *see also* Ex. E (competency evaluation)).  Petitioner does not allege that his behavior changed in the month intervening Dr. Bailey's July 23, 2012 finding of competence, and the entry of his plea on August 20, 2012.  The transcript of the plea hearing, including defense counsel's and the trial court's observations of and interactions with petitioner, demonstrate that petitioner exhibited no behavior at the plea hearing that raised any concern about his competence to proceed that day.  Neither petitioner's allegations, nor the state court record, reveal any basis to find that counsel's failure to request another competency evaluation and a competency hearing was unreasonable.  *See Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) ("[N]o relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done [as defense counsel did].").  Petitioner also has not shown a reasonable probability of a different result had counsel obtained another evaluation or a competency hearing.  Petitioner's conclusory, unsupported assertion that counsel "could" have found an expert to testify that he was incompetent is insufficient to establish prejudice under *Strickland*. *See Richter*, 562 U.S. at 792 (holding that to establish prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial").

Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three        "Petitioner charged with armed robbery w/a weapon.  A stick is not a weapon."  (Doc. 1, p. 14).

Petitioner claims trial counsel was ineffective for "failing to object to the State's characterization as the stick being a per se deadly weapon" and for "failing to request a jury instruction based on Fla. Stat.'s definition for 'weapon.'"  (Doc. 1, p. 14).  Petitioner also claims his due process rights were violated "by the State's failure to prove all the elements of the offense of robbery with a weapon because the stick did not satisfy the definition of 'weapon' under Fla. Stat."  (*Id*,).  Petitioner asserts he raised this claim in his Rule 3.850 proceeding.  (*Id.*).  Respondent asserts that the state courts' rejection of petitioner's ineffective assistance claim is consistent with *Strickland*, and that petitioner's due process claim is procedurally defaulted and without merit.  (Doc. 25, pp. 44-51).

Within his amended Rule 3.850 motion, petitioner claimed trial counsel was ineffective in failing to properly advise him before entering his plea that the stick he was alleged to have used in the course of his attempted robbery was not a "weapon" as defined by Fla. Stat. § 790.001(13).  (Ex. T-1, pp. 114-115).  The state courts denied petitioner's claim on the merits.  The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, denied relief as follows:

Defendant claims his plea was involuntarily entered due to defense counsel's misadvice and misinformation.  He alleges the charges against him arose from allegations Defendant entered Trisha's One Stop store, struck the store clerk, Carol Ainsworth, in the back of the head with a large stick, and ordered her to the counter where he purchased a cigar.  Then, she jumped away from the counter, punched him in the nose, and ran out of the store.  Defendant asserts there is no prima facie evidence to establish a corpus delicti for the attempted robbery charge, particularly as he did not attempt to take any money or property from Ainsworth, and counsel therefore erred in advising him to enter a plea.

Defendant was charged with attempted robbery with a weapon, to-wit:  a stick, in violation of sections 812.13(2)(b) and 777.04, Florida Statutes, a second degree felony punishable by 15 years incarceration (Exhibit A).  He entered a plea pursuant to a written plea agreement, which adopted the arrest report/probable cause affidavit as a factual basis for the plea (Exhibit B).  According to the report, Defendant not only struck Ainsworth and ordered her to the counter, he physically removed the cash register and threw it to the ground (Exhibit C).

. . . .

Defendant also alleges he never carried a large stick or struck Ainsworth with a large stick, which can be corroborated by the store's surveillance video, and had counsel viewed the video, he would not have advised Defendant to plea to the robbery and battery charges. Defendant is attempting to go behind his plea and raise issues known to him at the time he entered his plea.  During the plea colloquy, Defendant affirmed he was aware of the charges brought against him, he had enough time to go over the plea with counsel so Defendant understood everything it said, he was entering his plea freely and voluntarily, and he was satisfied with the services of his counsel (Exhibit D).  The plea agreement he signed states he is charged with attempted robbery with a weapon.  This weapon was described in the arrest report as a large stick.  The arrest report also notes Ainsworth required medical treatment and the incident was recorded on the surveillance video.  Defendant cannot now go back and assert the video

shows he did not have or use a large stick. *See Davis v. State*, 938 So. 2d 555, 557 (Fla. 1st DCA 2006); *Gidney v. State*, 925 So. 2d 1076, 1077 (Fla. 4th DCA 2006).

Defendant argues he is innocent of the crime because a stick is not a weapon under section 790.001(13), Florida Statutes, and counsel erred by not properly informing him as to this element. To the extent a "large stick" is not enumerated in section 790.001(13), it may be a weapon it if is used in such a manner that it could have caused great bodily harm or death. *See Tribbitt v. State*, 984 So. 2d 624, 625 (Fla. 2d DCA 2008). Allegations that Defendant struck Ainsworth in the back of the head with a large stick and she required medical attention are sufficient to support the charge. *See Gomez v. State*, 496 So. 2d 982, 983 (Fla. 3d DCA 1986) (toy gun used to strike the victim was sufficient to sustain a conviction for armed robbery with a weapon).

. . . .

Defendant also claims counsel's failure to put the State's case through a meaningful adversarial testing deprived Defendant of due process. Because he entered a plea, this claim is without merit.

(Ex. U, pp. 151-154). To summarize, the state court denied that aspect of petitioner's ineffective assistance claim raised here (counsel's failure to challenge the characterization of the stick as a weapon) on the merits, and also concluded that petitioner's due process/insufficient evidence claim was precluded by his knowing and voluntary no contest plea. The First DCA summarily affirmed. (Ex. AA).

A.     Ineffective Assistance of Trial Counsel

Petitioner's ineffective assistance claim is premised on his assertion that a stick is not a "weapon" under Florida law, and that trial counsel was ineffective for

failing to recognize that.  The circuit court determined, and the First DCA agreed, that given the facts alleged in the arrest report, the stick met Florida's definition of a weapon.  When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law."  *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).  This court will not "second guess" the Florida state courts' conclusion that the stick qualified as a weapon under Florida law.  Given this conclusion, petitioner cannot demonstrate counsel was ineffective for failing to challenge the "weapon" element of the charge, or for advising petitioner there was a sufficient factual basis for finding he used a weapon in the course of attempting to commit the robbery.  *See Callahan, supra*; *Herring v. Secretary*, 397 F.3d 1338 (11th Cir. 2005).  The state courts' rejection of petitioner's ineffective assistance claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  *Freeman v. Att'y Gen*., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure

to raise nonmeritorious issues does not constitute ineffective assistance.").  Nor was the decision based on an unreasonable determination of the facts.

B.      Insufficient Evidence

As to petitioner's challenge to the sufficiency of the evidence to support his conviction for attempted robbery with a weapon, petitioner waived the ability to bring that non-jurisdictional claim by virtue of his knowing and voluntary no contest plea.  *See Broce, supra*; *Blackledge, supra*; *Tollett, supra*; s*ee also United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir. 1998) (holding that defendant's challenge to the sufficiency of the government's evidence on an element of the crime, to which defendant pled, was waived by defendant's guilty plea).  Petitioner certified in his plea agreement:  "I have reviewed the facts of my case(s) with my attorney and I agree and stipulate there are sufficient facts available to the State to justify my plea of guilty or nolo contendere to the charge(s)."  (Ex. D, p. 27).

Even if not waived, petitioner, by agreeing to the facts set forth in the arrest report as the factual basis for his plea, admitted that he struck the victim in the back of the head with a large stick during the course of the attempted robbery, resulting in the victim requiring medical treatment.  The state courts' determination that the stick satisfied Florida's definition of a weapon is a state-law determination this court

will not second-guess.  Petitioner's challenge to the sufficiency of the evidence provides no basis for federal habeas relief.

Ground Four        "Substandard IQ".  (Doc. 1, p. 14).

Petitioner initially asserts:   "Florida Rule of Criminal Procedure 3.203, governs this issue, and in so Faulkner was and is entitled to a hearing under *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)."  (Doc. 1, p. 15).  After then describing what petitioner contends are his mental issues and deficiencies, for example, "paranoid schizophrenic, bi-polar, ADHD, Dyslexic, and PTSD" (*Id.*, p. 15) as well as "sub-par" scores in intelligence tests and "significant deficits in adaptive functioning" in areas of communication, self-direction, social interpersonal skills and health maintenance (*Id.*, pp. 15-16), petitioner concludes:

> Had counsel advocated for Faulkner as constitutionally guaranteed he would have sought treatment rather than incarceration and in doing so would have helped not only Faulkner but society as a whole.  Defense counsel's actions or inactions were both harmful and prejudiced to Faulkner especially when taken in light of the fact that Faulkner told defense counsel of all these issues prior to pleading and yet counsel still allowed the court to  hear and accept his plea.

(Doc. 1, p. 16).  Petitioner asserts he presented this claim to the state courts in his Rule 3.850 proceeding.  Respondent asserts this claim is procedurally defaulted, because there is no mention of any mental ailment or deficiency in petitioner's amended Rule 3.850 motion at all, much less mention of a "substandard IQ".

Likewise, there is no mention of any mental deficiency in petitioner's initial brief in his postconviction appeal.  (Doc. 25, p. 52).

The undersigned agrees with respondent that this claim is procedurally defaulted.  Petitioner mentioned nothing of intellectual disability, subaverage general intellectual functioning, or deficits in adaptive behavior in his amended Rule 3.850 motion or in his postconviction appeal.  (Exs. T-1, U).  As any attempt to present his claims would be barred by state procedural rules, *see* Fla. R. Crim P. 3.850(h) (bar against second or successive Rule 3.850 motions); Fla. R. Crim. P. 3.850(b) (imposing a two-year time limitation for Rule 3.850 motions), petitioner's claim is procedurally defaulted from federal habeas review.  Petitioner has made none of the showings requisite to excuse his procedural default.  Petitioner does not invoke the *Martinez v. Ryan* exception, (doc. 1, p. 15), and even if he did, he has not shown that his ineffective assistance claim is a substantial one.  In *Hittson, supra*, the Eleventh Circuit explained the "substantial claim" qualifier as established in *Martinez*:

> *Martinez* articulated the "substantial claim" requirement as follows:
>
> > To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.  *Cf. Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154

L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

*Martinez*, — U.S. at —, 132 S. Ct. at 1318-19.  Neither *Martinez* nor *Trevino* elaborated on or applied this standard, but we take the Court's reference to *Miller-El* to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

As the Court explained in *Miller-El*, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000).  That does not mean that a petitioner must show "that some jurists would grant the petition." *Miller-El*, 537 U.S. at 338, 123 S. Ct. at 1040.  "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings.  Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error."  Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right."  In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson*, 759 F.3d at 1269-70 (footnotes omitted).

Because none of the crimes with which petitioner was charged and to which he pled no contest was first degree murder or carried the death penalty, counsel had no basis to argue that Florida Rule of Criminal Procedure 3.203 or *Atkins*, applied. Moreover, because the State filed notice of petitioner's qualification for sentencing as a PRR, any effort by counsel to seek mitigation of sentence based on petitioner's "substandard IQ" would have been futile.  *See Walker v. State*, 955 So. 2d 1199, 1200 (Fla. 5th DCA 2007) ("The language in the PRR statute is mandatory and, thus, the trial court has no discretion to impose a lesser sentence.").  Petitioner has not presented a substantial claim that defense counsel was ineffective for failing to act as petitioner proposes.  Petitioner likewise fails to make the threshold showing necessary under *Schlup* to invoke the miscarriage of justice exception.  *See* discussion *infra* Ground Seven.  Petitioner's procedural default bars habeas review of Ground Four.

Ground Five        "Cumulative Errors".  (Doc. 1, p. 17).

This claim asserts:  "Counsel rendered ineffective assistance by the cumulative errors, which deprived him of his Sixth Amendment Right to have an

effective counsel.  The cumulative errors prejudiced defendant where counsel wasn't a good advocate on behalf of defendant."  (Doc. 1, p. 17).  Respondent asserts that if cognizable in federal habeas, this claim of "cumulative errors" is procedurally defaulted because petitioner did not present it to the state courts, and, in any event, it is without merit.  (Doc. 25, pp. 56-58).

Respondent is correct that this claim is procedurally defaulted.  The record establishes that petitioner did not present his "cumulative error" claim to the state courts.  Respondent is also correct that petitioner's claim fails on the merits because none of his individual claims of ineffective assistance of counsel have any merit. *See  Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (declining to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established federal law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *United States v. Waldon*, 363 F. 3d 1103, 1110 (11th Cir. 2004) (where there is no error there can be no cumulative error).  Petitioner is not entitled to federal habeas relief on Ground Five.

<u>Ground Six</u>          <u>"Failure to present plea offer"</u>.  (Doc. 1, p. 18).

Petitioner bases this claim on a general allegation that "[t]he state offered

several different plea settlements to the defendant.  Defense counsel did not present

them all to him in their entirety."  (Doc. 1, p. 18).  Petitioner does not describe any

of the alleged foregone "plea settlements", nor does he explain how he came to know

of them, since, as he contends, they were never communicated to him.  Petitioner

asserts these vague allegations to support this claim:

> Defendant understands that there were several offers prior to his
> acceptance of the final offer.  Each offer discussed different sentencing
> structures and/or crimes to be plead too [sic].  These were not
> communicated to defendant.  Had defendant been told of a different
> sentence structure, i.e., more probation, less prison, he would have
> accepted same.  The failure of defense counsel to succinctly advise each
> step of these previous plea offers/negations [sic] is ineffective, contrary
> to Strickland Standards as these plea offers would have resulted in a
> lesser sentence.  Plus given the fact that defendant was incompetent to
> even assist in any of his defense(s), he really was in no position to
> proceed to trial as he was not even aware of what was transpiring.  In
> fact he still is not aware.

(Doc. 1, pp. 18-19).  Petitioner asserts he presented this claim to the state courts in

his Rule 3.850 proceeding.  (*Id.*, p. 20).  Respondent contends this claim is

procedurally defaulted because petitioner did not present it to the state courts, and,

in any event, the claim is without merit.  (Doc. 25, pp. 56-58).

Respondent is correct that this claim is procedurally defaulted.  The record

establishes that petitioner never presented this claim to the state courts.  Again,

petitioner does not invoke the *Martinez v. Ryan* exception, (doc. 1, p. 15), and even if he did, he has not shown that his ineffective assistance claim is a substantial one. Petitioner's assertion that there were prior plea offers is wholly unsupported, and its vagueness indicates a lack of credibility.  For example, petitioner fails to explain how and when he came to "understand" that several prior plea offers were made. Petitioner also fails to provide any detail whatsoever concerning the alleged prior plea offers – he does not describe when they were made, by whom or in what form, nor does he describe their proposed terms and conditions.  His allegation that "[h]ad defendant been told of a different sentence structure, i.e., more probation, less prison, he would have accepted same" does not suggest that the State was agreeable to, or offered, a more favorable sentence.  Petitioner's allegations do not come close to stating a colorable claim under *Missouri v. Frye*,  — U.S. —, 132 S. Ct. 1399, 1408, 182 L. Ed. 2d 379 (2012) (holding that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"; also holding that defense counsel in that case was deficient in failing to communicate to the petitioner the prosecutor's formal plea offer before it expired, where petitioner produced the letter from the prosecutor communicating the offer).  Petitioner's claim is "wholly without factual support".  *Martinez*, 132 S. Ct. at 1319.   Petitioner likewise fails to make the

threshold showing necessary under *Schlup* to invoke the miscarriage of justice

exception.  *See* discussion *infra* Ground Seven.  Petitioner's procedural default bars

federal habeas review of Ground Six.

Ground Seven        "Actual Innocence".  (Doc. 1, p. 20).

Petitioner's final claim seeks federal habeas relief on the ground that he is

actually innocent.   The evidence which petitioner contends proves his actual

innocence is the surveillance video from Trisha's One Stop store.  Petitioner alleges

the following to support his claim:

> Petitioner in this case does assert that he did not commit the crime for
> which he was convicted.  Petitioner claims that the evidence shows that
> he was not the culprit and absent that that there was no weapon
> involved.  Further, the petitioner shows the Government, in this case,
> has committed a "Brady violation" by not producing exculpatory
> evidence that would benefit the defense.   The government had an
> obligation to produce the video surveillance tape of the store as it would
> show that petitioner was innocent of the charges against him.  They did
> not and there is more than a reasonable probability that the suppressed
> evidence would have produced a different verdict.

(Doc. 1, pp. 20-21).  Petitioner asserts he presented this claim to the state courts in

his Rule 3.850 proceeding.  (Doc. 1, p. 22).

Respondent contends petitioner's actual innocence claim fails to state a claim

cognizable on federal habeas review; that the actual innocence claim and any *Brady*

claim are procedurally defaulted because petitioner did not present them to the state

courts; and that the claims are without merit.  (Doc. 25, pp. 64-73).  The court need

not reach the procedural default issue, because petitioner's actual innocence claim

is not cognizable on federal habeas review, and his *Brady* claim is without merit.

A.      Freestanding Actual Innocence Claim

There is no clearly established federal law recognizing a federal constitutional

right to be released upon proof of "actual innocence." *District Attorney's Office for*

*Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72, 129 S. Ct. 2308, 174 L. Ed. 2d

38 (2009).  The law of this Circuit does not allow for a freestanding actual innocence

claim in a noncapital case. *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1356 (11th Cir.

2007) (dicta) ("[O]ur precedent forbids granting habeas relief based upon a claim of

actual innocence . . . at least in non-capital cases." (*citing Brownlee v. Haley*, 306

F.3d 1043, 1065 (11th Cir. 2002))).  This is not a capital case.  Absent a clear holding

otherwise by the Supreme Court, this court is bound by Eleventh Circuit precedent,

which does not recognize a freestanding actual innocence claim in a noncapital case.

B.      *Schlup* Procedural Gateway Actual Innocence Claim

To the extent petitioner attempts to use his allegations of actual innocence to

overcome  the  procedural  defaults  discussed  above,  his  attempt  fails,  as  his

allegations fall far short of satisfying the *Schlup* standard.  The sworn arrest report

setting forth the factual basis for petitioner's plea attests that the video surveillance

captured the facts contained in the report, that is, that petitioner entered the store,

struck Ms. Ainsworth on the back of the head with a stick, ordered her to the counter, was punched in the nose by Ainsworth, physically removed the cash register from the counter and threw it to the floor. As the police were talking to Ms. Ainsworth outside the store, petitioner walked out of the store. The officers noted that petitioner had been hit in the nose, and offered him medical treatment. Ms. Ainsworth identified petitioner as the perpetrator. Petitioner's allegation that he was not the "culprit" captured on the video surveillance tape has no credibility in light of the officer's sworn statements, the victim's sworn statements and identification of petitioner as the perpetrator, petitioner's concession of guilt through his no contest plea, and the fact that petitioner concedes, as part of his *Brady* claim, that he has never seen the videotape. Petitioner's allegations come nowhere near *Schlup*'s demanding standard.

C.    *Brady* Claim

The Eleventh Circuit summarized the standard governing *Brady* claims in *Gissendaner v. Seaboldt*, 735 F.3d 1311 (11th Cir. 2013):

> In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S. Ct. at 1196-97. A *Brady* violation consists of three basic components: "[1][t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued."

> *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948
> (1999).  The prejudice or materiality requirement is satisfied "if there
> is a reasonable probability that, had the evidence been disclosed to the
> defense, the result of the proceeding would have been different." *Id.* at
> 280, 119 S. Ct. at 1949 (quotation marks omitted).

*Id.* at 1319.  The record conclusively refutes petitioner's allegation that the State

suppressed the video surveillance.  The video surveillance tape was disclosed in the

sworn arrest report.  (Ex. A, p. 4 ("The incident was captured on surveillance video,

which was placed into Evidence.")).  The prosecution and the defense participated

in discovery prior to petitioner's plea. (Ex. B (docket entries indicating discovery)).

Both petitioner and defense counsel acknowledged, in the written plea agreement,

their awareness of the arrest report which disclosed the surveillance video.  (Ex. D,

p. 26 ("The **arrest report** or **offense report** or **probable cause affidavit** which is a

part of the court record filed with the clerk of the court is hereby incorporated by

reference and agreed to by the defendant as a factual basis for this plea. . . .")).

Petitioner contended throughout his Rule 3.850 proceeding (wherein he faulted trial

counsel for failing to review the surveillance video) that the video was readily

available for inspection.  (Exs. T-1, V, Y).  Petitioner's *Brady* claim is wholly

without merit.

　　　None of the claims raised in the petition provide an arguable basis for federal

habeas relief.  Petitioner's habeas petition should be denied.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack*, 529 U.S. at 483-84 (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Christopher Ray Faulkner*, Escambia County Circuit Court Case No. 12-CF-2533, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 24th day of May, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.